## Case No. 17,441.

### The WESTERN METROPOLIS.

[7 Blatchf. 214.] [1]

Circuit Court, S. D. New York. April 23, 1870.[2]

COLLISION—SCHOONER AND STEAMER—CHANGE OF COURSE—SPEED.

1. Where a schooner, closehauled, was crossing the course of a steamer, *held*, that it was the privilege and duty of the schooner to keep her course, and the duty of the steamer to avoid the schooner.

2. The following conclusions arrived at in respect to the collision in this case, which occurred at night, between a schooner and a steamer: If the night was either so dark or so foggy that the steamer, by slowing, stopping and backing as soon as she discovered the schooner, could not avoid the collision, then the steamer was moving at too great speed.

[Cited in The Colorado, Case No. 3,028; The City of Panama. Id. 2.764; The Alberta, 23 Fed. 812; The Oregon, 27 Fed. 755.]

3. It was a fault in the steamer, when she saw the schooner and the danger of collision, to port her helm, in ignorance of the direction in which the schooner was heading.

4. If the helm of the steamer had been kept steady, the fact that the course of the schooner was across the course of the steamer, to the starboard of the steamer, would soon have appeared, and also the fact that the proper change, if any, was for the steamer to starboard.

[Appeal from the district court of the United States for the Southern district of New York.]

[This was a libel by John Low, Jr., owner of the Triumph, to recover damages for a collision with the Western Metropolis. From a decree of the district court in favor of libelant (Case No. 17,439), an appeal was taken to this court.]

Erastus C. Benedict and Robert D. Benedict, for libelant.

William M. Evarts, for claimant.

WOODRUFF, Circuit Judge. It is quite unnecessary to recapitulate the evidence in this case, or discuss the questions of fact in relation to which there is any conflict of testimony. The schooner Triumph, of which the libellant was owner, laden with fish, was, at about four o'clock in the morning of the 17th of March, 1864, on her voyage from Gloucester, Massachusetts, to New York, at a place eastwardly from the Cross Rip Light, near Nantucket Shoals. The wind was northwest by west, and, after beating out her port tack, she had tacked to the southwest, and, while on that starboard tack, closehauled, she was seen by the lookout on the steamer Western Metropolis, which was then on her passage from New York to Boston, and was running on a course about east. She was immediately reported to the pilot, and seen by him and the man at the wheel dead ahead, or a little on the steamer's port bow. The evidence of all the witnesses, as well those produced by the libellant as those produced by the claimant, establishes very satisfactorily that, if the steamer had kept her proper course, she would have passed to the windward of the schooner, at a perfectly safe distance astern of her. Although there is much discrepancy as to the state of the atmosphere, and the distance at which a sailing vessel could be seen, and, also, as to whether the schooner had a light burning in her rigging, the testimony of the pilot himself shows that he in fact saw the schooner in season to take the proper manœuvre, had he known whether any change of course was necessary. In entire ignorance whether the schooner was approaching him or going from him on a direct line, or was crossing to the southward or to the northward, the pilot of the steamer gave the order to port her helm, and it was hove hard-a-port. Seeing the danger of collision, he next ordered the engine to be slowed, stopped and backed, which was accomplished, but the headway of the steamer was such that a collision ensued, which sank the schooner, and she with her cargo were wholly lost, and with her two of her seamen.

The grand mistake of porting the helm of the steamer swung her around to starboard, so as to place her in pursuit of the schooner, or to bring her on a line converging to the schooner's course, and meeting it precisely at the place of collision. Whatever view be taken of various aspects of the case, the steamer was wholly and solely in fault. The schooner was closehauled on her starboard tack, and it was not merely her privilege, but, in such circumstances, in the night, in

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming Case No. 17,439.]

view of the near approach of the steamer, it was her duty to keep her course, in order that the steamer might not be embarrassed in doing her duty, which was to avoid her, and this the schooner did.

1. If the night was either so dark or so foggy that by slowing, stopping and backing as soon as the schooner was discovered the collision could not be avoided, then the steamer was moving at too great speed. The proof is, however, I think, decidedly, that she saw the schooner at a distance quite sufficient.

2. When she saw the schooner and the danger of collision, it was a palpable fault to port the helm, not knowing which way the schooner was heading.

3. If the helm of the steamer had been kept steady, an observation of much less than a minute would have shown that the course of the schooner was, as in truth it was, across the course of the steamer, to the southward, and would also have shown that, if any change was necessary or prudent, it was to heave the helm to starboard.

Independently of the conflict as to whether the schooner had a light or not, or whether there was a fog or not, the case seems to me too clear to demand further discussion.

The decree must be affirmed, with costs.

[An appeal was taken to the supreme court, and, on motion and affidavit. commissions were issued from that court to take additional testimony. 12 Wall. (79 U. S.) 389. It does not appear, however, that the case was ever brought to a hearing.]